## PEOPLE v BARNWELL

1. HOMICIDE—MANSLAUGHTER—EVIDENCE—TESTIMONY—FACTS.

Testimony of a neurosurgeon in a trial for manslaughter that the cause of a child's death was trauma which was inflicted by a blow to the head was testimony of a fact, pure and simple; there was nothing inferential about it.

2. HOMICIDE—MANSLAUGHTER—EVIDENCE—TESTIMONY—FINDINGS OF FACT.

A finder of fact in a manslaughter trial is not precluded from finding that the death was caused by trauma, even though an expert witness who testified to that fact also testified that a congenital defect may have been a contributing cause of death.

3. HOMICIDE—MANSLAUGHTER—INDICTMENT AND INFORMATION— AMENDMENT—DUE PROCESS—PREJUDICE.

A defendant was not denied due process of law or prejudiced by the continuation of the trial where the original information charged her with voluntary manslaughter and the prosecution was allowed to amend the information, after both sides had rested, to add the charge of involuntary manslaughter, of which she was convicted, because if the amendment did anything, it inured to defendant's benefit; there is but one offense of manslaughter in Michigan and the statutes do not recognize grades or degrees.

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted Division 1 February 13, 1975, at Detroit. (Docket No. 19717.) Decided April 8, 1975.

Cynthia Barnwell was convicted of manslaughter and cruelty to a child. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur 2d, Homicide §§ 398, 399.

[3] 40 Am Jur 2d, Homicide §§ 183, 210.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas A. Ziolkowski,* Assistant Prosecuting Attorney, for the people.

*Riley & Roumell* (by *John F. Brady),* for defendant.

Before: V. J. BRENNAN, P. J., and D. E. HOLBROOK, Jr., and O'HARA,* JJ.

O'HARA, J. This is an appeal involving a term which has come to be known to medical doctors, psychiatrists, psychologists, social workers and the courts as a "battered child" case. The term has gained sufficient professional acceptance to be utilized in a judicial opinion.

The child's mother, defendant and appellant herein, was convicted on both counts of a two-count information charging manslaughter, MCLA 750.321; MSA 28.553, and cruelty to a child, MCLA 750.136; MSA 28.331.

As our Supreme Court has said, times without number, it would serve no purpose to spread on the pages of reported cases the details of the evidence of injuries in some manner sustained by the child: burns, bruises, a limp, a temporary withdrawal psychologically, and ultimately death. The case was tried to the court after proper waiver of a jury trial.

Three claims of error are made. The cause of death is challenged. We address ourselves first to that issue. The evidence is circumstantial. While it is true that from time to time the child was in the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

temporary care and custody of others, primarily she was under the control of the defendant mother.

The defense claims that causality could only have been arrived at from impermissible "inference upon inference".

An autopsy was performed by a pathologist under the direction of an expert in this field eminently well qualified and the author of many publications on forensic pathology. Additionally, a neurosurgeon testified with great specificity as to all of his findings. He was subjected to searching cross-examination. Finally, the trial judge asked the key question:

"*The Court:* Doctor, I have one question I want to ask you. In your opinion, what was the cause of death?

"*A*. In my opinion, the cause of death was trauma, some injury."

At this point it becomes crucial to define legally what this testimony was. In our view it was a fact, pure and simple. There was nothing inferential about it.

We hasten to add that standing alone this fact did not in the slightest degree implicate defendant. No inference as to defendant's guilt could be drawn from it.

It follows then that we must scrutinize the record to determine what inferences of defendant's guilt could be permissibly drawn from that established fact. We also must add that the expert testified also that an arteriovenous malformation, while not a cause of death, might have contributed to it.

We deem it essential, at this point, to make crystal clear that the *fact* that the neurosurgeon

testified to another possible contributing cause does not preclude the trial court from making its finding from the fact testified to by the expert that death was caused by trauma. This is particularly true of the case at bar because the trial judge again asked the following crucial question and received the following answer:

"*The Court:* What I want to get clear in my own mind, because the issue is very important in this case, is that the child didn't die directly from a breakdown of the congenital defect that you found there?

"*A.* No, I don't think so. I think it was a contributing factor."

The foregoing testimony was also testimony of fact. The trier of fact was as free to accept or reject it as he was any other asserted fact.

Assuming arguendo the trier of fact believed the cause of death to have been trauma, still no suggestion or implication of the slightest nature could have been inferred that defendant was responsible therefor. She was still assumed to be innocent.

The next step is to search the record further for evidence of what did cause the traumatic injury.

There is an infinity of possibilities. Playground accidents, falls at home, injury on the streets, all and many others could explain a traumatic injury. However, there is positive, affirmative testimony in the record which, if believed by the judge, would rule out accidental injury.

"*Q.[Prosecuting Attorney]:* Now, is there a way, Doctor, of telling whether trauma or an impact was sustained as a result of a fall, or as a result of a blow to that particular part?

"*A.* Yes, there is. The location of an injury deep inside the brain * * * as the one noted in this case is

not, in my opinion, the result of a fall. I don't see how that injury could have been sustained in any other fashion but a blow to the top of the head."

The foregoing testimony was factual by a qualified expert permitted under the rules of evidence to give opinion evidence. The trier of fact was entitled to accept or reject it as he could testimony of any other fact.

We have now reached the point where there is *fact* testimony to two things totally unrelated to any inference. First, the cause of death was trauma. Second, the trauma was inflicted by a blow to the head.

From these two facts the trial judge made two separate and distinct permissible inferences. The first was that the blow causing death was inflicted by the defendant. The second is that the defendant was responsible for the gross, if not almost sadistic, maltreatment of the child. Such separate and distinct inferences are in no way an inference upon inference.

We find it difficult to believe that the deceased child could have made up the answer to a question posed to her on one of her many admissions to the hospital as to how she sustained a burn on the inside of her leg. Her answer was, "Mommy burned me". We have reviewed the whole record and we are convinced it sustains defendant's guilt beyond a reasonable doubt on both counts.

The remaining claim of error is purely legal as opposed to testimonial. Appellant states it thus:

"Was appellant denied due process of law when the original information charged appellant with voluntary manslaughter and the prosecution was allowed to amend the information, after both sides had rested, to

add the new charge of involuntary manslaughter for which appellant was convicted?"

In Michigan the crime of manslaughter is not statutorily defined in terms of elements and degree. The relevant statute reads as follows:

"Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than fifteen [15] years or by fine of not more than seven thousand five hundred [7,500] dollars, or both, at the discretion of the court." MCLA 750.321; MSA 28.553.

Thus we are dependent upon case law for the elements of the offense and the degrees thereof, if any. In a recent case the Supreme Court had this to say:

"Manslaughter is generally divided into two classes—involuntary or voluntary. In *People v Onesto,* 203 Mich 490, 496; 170 NW 38 (1918), this Court approved the following definition of manslaughter:
" 'Now, manslaughter is the unlawful killing of another without malice, express or implied. The offense is one that is committed without malice or premeditation.'
"Involuntary manslaughter has been defined as 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.' " (Citations omitted.) *People v Carter,* 387 Mich 397, 418–419; 197 NW2d 57 (1972).

In this case the prosecution was allowed to amend the information after the proofs were in and both sides rested. The trial court permitted the prosecutor to reduce count one to involuntary manslaughter from the original charge of volun-

tary manslaughter. This was done over the specific objection of able and alert trial counsel. Equally able and resourceful appellate counsel argued the point with vigor and was subjected to extensive bench questioning, particularly with regard to what prejudice defendant suffered by changing the charge to one requiring a lesser (albeit different) quantum of proof.

That there is statutory authority to so amend, subject to case law limitations, cannot be questioned. We set forth the statute in pertinent part:

"The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he had not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury." MCLA 767.76; MSA 28.1016.

The question under all the cases we have examined (and they are legion) is, did the invoking of the statute result in denial of a fair trial, which may be just another way of saying denial of due process?

Appellate counsel counts heavily first on the fact that the amendment denied the defendant a preliminary examination on the charge of involuntary manslaughter. We find this contention without merit. Just as the whole is greater than any of its parts, the evidence to establish the felony of volun-

tary manslaughter of necessity includes the requisite quantum of proof that the offense of involuntary manslaughter was committed. The question of probable cause to believe that defendant committed it is unaffected by the proof of the commission of the crime.

The second point urged is that the amendment denied the defendant the option of pleading guilty to involuntary manslaughter. A motion to the trial court would have mandated the discharge of the jury had there been one and a "continuance of the cause unless it shall clearly appear * * * that he [defendant] has not been misled or prejudiced * * * or by a postponement [of the trial] to a later day with the *same* or *another* jury". (Emphasis supplied.) The rights under the statute were at no time raised, nor the statute even adverted to. We can see no way in which defendant was in any way prejudiced by the continuation of the trial on a charge which under the case law is in effect a less serious charge. Further, strictly speaking, as the Supreme Court has said:

"Our statutes do not recognize grades or degrees of manslaughter, they neither define nor grade it. There is but one offense of manslaughter in this state." (Citation omitted.) *People v Rogulski,* 181 Mich 481, 494; 148 NW 189 (1914).

If the amendment did anything, it inured to defendant's benefit. Of this she can hardly complain.

As our opinion indicates we have reviewed the whole record in this case with particular care. We are convinced that the defendant was in no way prejudiced. The trial met all the requisites of our system guaranteed to any accused.

The conviction is affirmed on both counts.