PEOPLE v TRIPLETT

Docket No. 48547. Submitted February 4, 1981, at Detroit.—Decided April 8, 1981.

Ronald G. Triplett was convicted by a trial court acting as the trier of fact of assault with intent to murder, assault with intent to rob while armed, and of use of a firearm during the commission of a felony and was sentenced to prison, Wayne Circuit Court, Myron H. Wahls, J. He appeals, alleging that the trial court's findings of fact were insufficient to support his conviction of assault with intent to murder and that he was denied his right to effective assistance of counsel. *Held:*

1. The trial court made sufficient findings of fact. In addition, the record supports the trial court's conclusion of guilt.

2. The record supports the conclusion that defense counsel's decision not to request a *Walker* hearing was pure trial strategy of which defendant was aware.

Affirmed.

1. Criminal Law — Aiders and Abettors — Specific Intent — Circumstantial Evidence — Statutes.

A trier of fact must find that a defendant either possessed the specific intent to commit a specific-intent crime or knew that an accomplice had such intent to order to convict the defendant of a specific intent crime under the aiding and abetting statute, and such intent or knowledge may be inferred from circumstantial evidence (MCL 767.39; MSA 28.979).

2. Criminal Law — Specific Intent — Assault with Intent to Murder — Statutes.

Assault with intent to murder is a specific-intent crime (MCL 750.83; MSA 28.278).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 82, 119, 123.
 30 Am Jur 2d, Evidence § 1172.
[2] 40 Am Jur 2d, Homicide §§ 82, 568 *et seq.*
[3] 76 Am Jur 2d, Trial § 1250 *et seq.*
[4] 29 Am Jur 2d, Evidence §§ 123, 148 *et seq.*
 75 Am Jur 2d, Trial § 827.
[5] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[6] 21 Am Jur 2d, Criminal Law §§ 315, 319, 321, 440, 441.

3. COURTS — TRIAL COURTS — TRIER OF FACT — COURT RULES.

A trial court, acting as the trier of fact, must specifically find the facts and separately state its conclusions of law thereon, and such findings shall be sufficient where the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without overelaboration of detail or particularization of facts (GCR 1963, 517.1).

4. CRIMINAL LAW — PROSECUTING ATTORNEYS — EVIDENCE — DUE PROCESS.

Due process requires that a prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that a defendant is guilty beyond a reasonable doubt before the defendant can be convicted of a criminal offense.

5. APPEAL — CRIMINAL LAW — NONJURY CASES.

The Court of Appeals in reviewing a criminal case tried without a jury must review the entire record to determine whether a trial court clearly erred.

6. CRIMINAL LAW — APPEAL — INEFFECTIVE ASSISTANCE OF COUNSEL — TRIAL STRATEGY.

A defendant in a criminal case will not be found on appeal to have been denied effective assistance of counsel on the ground that his attorney failed to request a *Walker* hearing where the defendant claims no brutality, promises, or delay in proceedings prior to his making a statement to police, he admits making the statement, he has not moved for a new trial on that basis, and the record supports the conclusion that the actions of his attorney amounted to pure trial strategy.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Paul G. Bruno,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: BRONSON, P.J., and N. J. KAUFMAN and M. F. CAVANAGH, JJ.

N. J. KAUFMAN, J. Defendant was convicted in a bench trial on August 9, 1979, in the Wayne County Circuit Court of: Count I—assault with intent to murder, MCL 750.83; MSA 28.278, Count II—assault with intent to rob being armed, MCL 750.89; MSA 28.284, and Count III—felony firearm, MCL 750.227b; MSA 28.424(2). Defendant was sentenced on August 20, 1979, to from 17 to 35 years on Count I, from 17 to 35 years on Count II, and to two years on Count III. Defendant appeals as of right, pursuant to GCR 1963, 806.1.

Ernesto Garza testified that be owned the Eldorado Restaurant and that on October 11, 1978, at about 10:30 p.m., he was sitting in the front of the store near the cash register when someone wearing a mask and false beard entered through the front door. The intruder was carrying a .45-caliber firearm and announced a holdup. A waitress named Maria Montes was in the restaurant and ran to the back of the kitchen. Garza heard a shot in the back kitchen area, and the robber standing near him (referred to as first robber) went down the aisleway to see what happened. Garza went to the men's room in the back and lay down on the floor. Two employees were also lying on the floor at that time. The first robber asked Garza for money and Garza replied that there was no money and told him to check the cash register. Garza heard the cash register open and then heard a bell ring. Garza further testified that the waitress, Maria Montes, was bleeding from her left arm and left chest. There was a bullet hole in the men's room door.

Kenneth Barnes was the cook in the restaurant. Barnes testified that he was in the kitchen when a person came in from the rear of the restaurant and grabbed him. The man had a gun in his hand

and was wearing a mask and beard. Barnes heard Maria scream and heard her run into the men's room. The second robber turned and fired the gun, hitting the door of the men's room. The robber then opened the men's room door and told Barnes to lie face down on the hallway floor. Barnes did not see the first robber but heard someone speaking to Garza. Barnes testified that Maria had been shot.

Maria Montes' testimony corroborated that of Garza and Barnes.

John Coop lived near the restaurant. He testified that he saw two people getting into a car outside the restaurant who "looked funny". The car took off when the headlights from Coop's truck shined on it. The car had one dim taillight. Coop followed the car at 80 miles per hour. He lost sight of the car for a short time but caught up with it when the car pulled onto the shoulder of the road to go around a truck. He continued following the car until he could get the license number. Coop then went back to the restaurant and gave the license number to the police.

Detective Sexton testified that the license number given to him by Coop was WBS 161. The police checked the ownership of that vehicle and determined that it ws owned by Cheryl Triplett. He further testified that the police found a .45-caliber shell casing in the restaurant.

Harry Reed, a latent print specialist, testified that he obtained prints from the housing of the cash register and from one key of the register. Reed stated that he compared the lifted prints with known fingerprints of the defendant and determined that they were the same prints.

Buckner Shahan was the officer in charge of the case. He testified that the vehicle matching the

license number was a 1977 Pontiac Grand Prix. The Grand Prix was reported stolen on October 12, 1978. When the defendant was arrested on October 30, Shahan found a registration for the Grand Prix in defendant's possession.

Shahan and Sergeant Anderson testified that they interviewed the defendant shortly after his arrest. Prior to the interview, Anderson read him the police department's "pre-interview advice of rights card". Shahan testified that the defendant then said that he would talk about the charges against him. The defendant told the officers that he had participated in the robbery but that he was not the man who shot the waitress. Shahan testified that the defendant "said that he couldn't tell us who was the guy who did the shooting because he feared harm to his family and himself if he had, and that he didn't know what had happened to the car or the guns after the robbery".

Shahan further testified that the defendant asked that the questioning be stopped after the defendant had denied being the person who shot the waitress.

Sergeant Anderson testified that he was present when Shahan interviewed the defendant. Anderson stated that he advised the defendant of his rights and that defendant told him that he understood them. Anderson recalled, without looking at his notes, that the defendant had told him that he was in the restaurant but was not the man who shot the girl. He recalled defendant "saying that he was fearful for his safety or his family's safety * * *". Anderson's notes were written after the conversation terminated. After refreshing his recollection from the notes, Anderson testified that defendant told him that he had gone in the front door and out the back door. Defendant also said

that his car was used and that after the robbery the other robber dropped defendant off at his own home and left in defendant's car.

After closing arguments, the court made findings of fact and found the defendant guilty as to all three counts.

On appeal, defendant first claims that the findings of fact by the trial judge were insufficient to support defendant's conviction of assault with intent to murder. Defendant asserts that to convict a person of a specific-intent crime through the aiding and abetting statute, the trier of fact must find that the defendant either possessed the specific intent to kill or knew that the principal had such intent. Although we agree with defendant's interpretation of the law, we do not agree with his claim regarding the insufficiency of factual findings.

Assault with intent to murder is a specific-intent crime, *People v Fields,* 64 Mich App 166; 235 NW2d 95 (1975), citing *People v Phillips,* 37 Mich App 242; 194 NW2d 501 (1971), lv den 386 Mich 789 (1972). *Cf. People v Joeseype Johnson,* 407 Mich 196; 284 NW2d 718 (1979), opinion of Justice WILLIAMS, noting that the Legislature has provided that specific intent is required in an assaultive crime when the crime is an assault *with intent* to do a prohibited activity.

The prosecution contends that assault with intent to murder can be a general intent crime because murder can be in either the first or second degree. That contention, however, is incorrect. When a defendant is charged with assault with intent to murder, whether the killing would have been murder in the first or second degree is immaterial, *People v Scott,* 6 Mich 287 (1859). Assault with intent to murder is, thus, a specific-intent crime.

The aiding and abetting statute, MCL 767.39; MSA 28.979, provides:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

Defendant correctly notes that to be convicted as an aider and abettor the defendant must either himself possess the required intent (in this case, specific intent) or participate while knowing that his coparticipant possessed the requisite intent. *People v Poplar,* 20 Mich App 132, 136; 173 NW2d 732 (1969), stated:

"Where a crime requires the existence of a specific intent, an alleged aider and abettor cannot be held as a principal unless he himself possessed the required intent or unless he aided and abetted in the perpetration of the crime knowing that the actual perpetrator had the required intent. 22 CJS, Criminal Law, § 87; 21 Am Jur 2d, Criminal Law, § 124.

" 'But it is the knowledge of the wrongful purpose of the actor plus the encouragement provided by the aider and abettor that makes the latter equally guilty. Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose.' *People v Ellhamer* (1962), 199 Cal App 2d 777, 782; (18 Cal Rptr 905, 908)."

Either defendant's own specific intent or his knowledge that his coparticipant had the necessary specific intent may be inferred from circumstantial evidence, *Fields, supra,* 174. To convict

defendant as an aider and abettor in the present case, then, there must be evidence that either the defendant himself possessed the specific intent to murder or that he knew his coparticipant possessed that intent, and either intent may be inferred circumstantially. See *People v Rigsby,* 92 Mich App 95; 284 NW2d 499 (1979), *lv den* 408 Mich 879 (1980).

The final determination to be made on this issue is whether the court made sufficient findings of fact under the above standards and, if so, whether the findings were clearly erroneous.

*People v Bruce Ramsey,* 89 Mich App 468, 473-474; 280 NW2d 565 (1979), *lv den* 407 Mich 861 (1979), detailed what findings must be made by the court:

"GCR 1963, 517.1 requires the trial court, in actions tried without a jury to 'find the facts specially and state separately its conclusions of law thereon'. Fact findings are sufficient if 'the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts.'"

After the conclusion of the trial in the instant case, the court stated its findings regarding this issue:

"With regard to the offense of assault with intent to murder, the Court has heard the testimony of Mr. Garza, but more significantly from witnesses Maria Montes and Kenneth Barnes and the assailant who came in the rear of the Eldorado also had a weapon and had some initial conversation with Mr. Barnes in which he physically assaulted him, and in the process Miss Montes in fear attempted to run and hide in the men's lavatory. And at this point, it is testified that the assailant at the back fired a .45 caliber bullet into the

door, hitting Miss Montes in the left elbow, I believe, and in the left chest.

"Well, it seems fairly clear to the Court and it is not disputed at all in this record that the intent, the offer of violence to Miss Montes by the assailant, taking into consideration the nature of his being there, the weapons used, certainly satisfies this Court that there was an intent to murder. She is indeed very fortunate that she wasn't killed.

\* \* \*

"I recall that Mr. Telek did bring to the attention of the Court on the charge of assault with intent to murder the People have not contended that this Defendant was responsible for the shots fired at Miss Montes, but Mr. Telek has advised the Court that as an aider and abettor, the transaction still continuing after the shot was fired, not having come to rest, that the law provides that one who participates in an offense with another is as guilty as that person if that person is in fact guilty.

"I find the Defendant guilty on all three counts."

We find that under *Bruce Ramsey, supra,* and under GCR 1963, 517.1 the court made sufficient findings of fact. The court was clearly aware of the intent issue and resolved that issue.

*People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), recently considered the concept of sufficiency and held:

"Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense \* \* \*."

Although *Hampton* involved a jury conviction, the Court relied upon *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979), a nonjury criminal case, in reaching its conclusion. It should

be noted that the present case also involves a nonjury conviction. Prior to *Hampton,* the standard for review of sufficiency of the evidence in nonjury criminal cases was stated in *People v Hubbard,* 19 Mich App 407, 413; 172 NW2d 831 (1969), *aff'd* 387 Mich 294 (1972):

"In a nonjury case we are required to review the entire record to determine whether the trial judge clearly erred."

Because it is unclear whether *Hampton* applies to nonjury cases, this Court will analyze the facts under both the *Hubbard* and *Hampton* standards of review.

Since defendant was convicted as an aider and abettor, the evidence must be sufficient to show either that defendant himself possessed specific intent or that he knew his coparticipant possessed specific intent to kill. As in *Poplar, supra,* there is no evidence that defendant himself possessed specific intent to kill. The two armed men entered the restaurant through different doors, and the defendant did not go to the back of the restaurant until after he heard the shot. The issue, then, is whether defendant's knowledge of his coparticipant's specific intent can be inferred circumstantially.

In the present case, the trial court made sufficient findings of fact. Additionally, the evidence was sufficient to support the trial court's findings that defendant's coparticipant possessed the specific intent to kill and that it could be inferred circumstantially that defendant was aware that his coparticipant possessed that intent. It is a reasonable inference that when two masked men, each brandishing a gun, enter a restaurant and announce a holdup each can expect that one or

both of the guns may be used during the robbery. Thus, sufficient evidence was introduced to justify the trial court's conclusion of guilt beyond a reasonable doubt under *Hampton, supra.* Additionally, viewing the entire evidence does not convince this Court that a mistake has been committed under the clearly erroneous standard of *Hubbard, supra.*

The defendant further claims on appeal that he was denied his right to effective assistance of counsel in that his attorney did not request a *Walker* hearing, *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), in regard to defendant's statements to police.

Defendant does not claim any brutality, promises, or delay in the proceedings prior to the statement. Nor does he deny making the statement. Neither has he filed for a motion for a new trial based on ineffective assistnace of counsel. *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973). We believe that this tactic was pure trial strategy to support his contention of lack of intent. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). As stated in *People v Parisi,* 270 Mich 429, 434; 259 NW 127 (1935):

"Error is claimed because of the prosecutor's refusal to exhibit to defendant's attorney certain written statements alleged to have been made by defendant * * *. Defendant's own statement was of no conceivable value to him. He must have known what was contained therein."

Defendant knew that he had denied the shooting, and he relied on that fact as his trial strategy.

We have examined the other grounds for appeal and find them to be without merit.

In the case at bar, it was reasonable to infer

from the circumstances that the intentional discharging of one of the two handguns carried into the restaurant, resulting in a path of internal destruction through the back and breast of a female employee, was fairly within the scope of the common unlawful enterprise. Our holding is in accord with *Fields, supra, People v Wright,* 44 Mich App 111; 205 NW2d 62 (1972), and *People v Palmer,* 392 Mich 370, 378-379; 220 NW2d 393 (1974).

Affirmed.