PEOPLE v VICUNA

Docket No. 77635. Submitted January 15, 1985, at Detroit.—Decided March 18, 1985.

Defendant, George Vicuna, was convicted by a jury in the Wayne Circuit Court of two counts of first-degree murder and one count of felony-firearm. The trial court, Theodore R. Bohn, J., sentenced defendant to life imprisonment for each murder conviction and to the mandatory two-year term for the felony-firearm conviction. Defendant appeals. *Held:*

1. The trial court properly instructed the jury on self-defense. Defendant was not entitled to an instruction on the qualified right to self-defense.

2. No manifest injustice occurred as a result of the trial court's jury instructions in regard to the necessary intent required for manslaughter.

3. The evidence adduced at trial was sufficient to prove that defendant aided or abetted in the killing of Hazime. There was sufficient evidence to establish that defendant entertained the requisite specific intent to kill both Hazime and Berry. A rational trier of fact could have found that defendant possessed the specific intent to kill Hazime. Defendant was not harmed by a jury instruction which limited the jury's ability to find specific intent under an aiding and abetting theory.

4. Defendant's trial counsel's performance was determined to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Appeal and Error §§ 623, 891.

[2] 75 Am Jur 2d, Trial § 589.

[3] 40 Am Jur 2d, Homicide §§ 519-521.

75 Am Jur 2d, Trial § 727.

Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.

Duty of trial court to instruct on self-defense, in absence of request by accused. 56 ALR2d 1170.

[4] 5 Am Jur 2d, Appeal and Error § 883.

[5, 6] 21 Am Jur 2d, Criminal Law §§ 167, 171.

[7] 40 Am Jur 2d, Homicide § 45.

[8, 9] 21A Am Jur 2d, Criminal Law §§ 984, 985.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

be constitutionally adequate when tested pursuant to the Michigan test applicable to ineffective assistance of counsel claims. Defendant has not shown any prejudice with respect to his federal Sixth Amendment ineffective assistance of counsel claim when it is evaluated pursuant to the federal standard applicable to such claims.

Affirmed.

1. CRIMINAL LAW — APPEAL — PRESERVING QUESTION — JURY INSTRUCTIONS.

A defendant's failure to object to a trial court's instructions to the jury will not preclude appellate review of the instructions where a manifest injustice would otherwise result; the Court of Appeals has developed the policy of reviewing jury instructions in their entirety to prevent any manifest injustice or miscarriage of justice.

2. CRIMINAL LAW — APPEAL — PRESERVING QUESTION — JURY INSTRUCTIONS.

No party may assign as error the failure to give an instruction unless he specifically objects at trial thereto; the failure of a court to instruct on any point of law in a criminal trial is not a ground for setting aside a guilty verdict unless the instruction was requested by defendant or his counsel (MCL 768.29; MSA 28.1052; GCR 1963, 516.2).

3. CRIMINAL LAW — SELF-DEFENSE — QUALIFIED RIGHT TO SELF-DEFENSE — JURY INSTRUCTIONS.

A defendant is not entitled to a jury instruction on the qualified right to self-defense where the defendant's position at trial is that his victims were the initial aggressors; the qualified right to self-defense focuses upon whether the defendant would have had a right to self-defense but for his actions as the initial aggressor.

4. APPEAL — SUFFICIENCY OF EVIDENCE — STANDARD OF REVIEW.

The standard of review applicable to a sufficiency of the evidence claim is whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

5. CRIMINAL LAW — AIDERS AND ABETTORS.

One who procures, counsels, aids or abets in the commission of an offense may be tried and convicted as if he directly committed the offense; mere presence, even with knowledge that an offense is about to be committed, is not enough to make one an

aider or abettor; a defendant, to be convicted as an aider or abettor, must either himself possess the required intent or participate while knowing that the principal possessed the required intent (MCL 767.39; MSA 28.979).

6. CRIMINAL LAW — WORDS AND PHRASES — AIDERS AND ABETTORS.

The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime.

7. CRIMINAL LAW — HOMICIDE — FIRST-DEGREE MURDER — SPECIFIC INTENT.

First-degree murder is a specific intent crime; to be convicted, the defendant must either himself possess the required intent or participate while knowing that the principal possessed the required intent; such specific intent may be inferred from circumstantial evidence.

8. CRIMINAL LAW — SIXTH AMENDMENT — APPEAL — ASSISTANCE OF COUNSEL.

The standard to be used by a court for reviewing a federal claim under the Sixth Amendment concerning ineffective assistance of counsel is: the defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment; counsel's performance is to be evaluated in light of prevailing professional norms and the defendant must make two showings, (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense; the test is "but for counsel's unprofessional errors, the result of the proceeding would have been different; a finding of reasonable probability is necessary; the trial court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.

9. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.

The standard to determine whether under the Michigan Constitution a defendant had effective assistance of counsel is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations; even where assistance of counsel satisfies the constitutional requirements the defendant is entitled to a fair trial; a defendant can be denied a fair trial if his attorney makes a serious mistake; a court should not grant a

new trial unless it finds that but for the mistake defendant would have had a reasonably likely chance for acquittal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*John C. Mouradian,* for defendant on appeal.

Before: T. M. BURNS, P.J., and V. J. BRENNAN and W. A. PORTER,* JJ.

PER CURIAM. Defendant was charged with two counts of first-degree murder, MCL 750.316; MSA 28.548, and one count of felony-firearm, MCL 750.227b; MSA 28.424(2). On March 24, 1982, following a four-day jury trial, defendant was convicted on all three charges. On April 5, 1982, defendant was sentenced to serve life in prison for each murder conviction and to the mandatory two-year term for the felony-firearm conviction.

Defendant appealed as of right to this Court and filed a motion to remand to the trial court so that he could pursue his ineffective assistance of counsel claim and file a motion for new trial. On February 24, 1983, this Court denied defendant's motion. On March 28, 1983, defendant filed a delayed application for leave to appeal with the Supreme Court. On June 8, 1983; this Court dismissed defendant's appeal for lack of progress. On March 29, 1984, the Supreme Court remanded the case to this Court for reinstatement of defendant's appeal as of right. 419 Mich 860; 345 NW2d 201 (1984).

Defendant was charged with the murders of

* Circuit judge, sitting on the Court of Appeals by assignment.

Adel Berry and Mohammed Hazime which occurred on May 24, 1981, at approximately 3 a.m. in the parking lot of the Pompei Lounge in the City of Dearborn. Louisa Mendoza testified that she accompanied her roommate Katrina Perez and defendant, Katrina's boyfriend, to the Pompei Lounge on May 23, 1981, shortly before midnight. As the evening progressed, the three did some drinking and dancing after which Mendoza went to the restroom. Upon her return, Mendoza was told by Perez and defendant that they had gotten into an argument with "30 Arabs" who "jumped" defendant and tried to take his seat. Shortly thereafter, the three decided to leave and were escorted to their car by the bar's bouncer. While they drove to the women's home, defendant said "he was going to get them". When they arrived, defendant left both women in the car while he went into their house. After a few minutes, he exited from the house and went two houses down where he spoke briefly to two friends, Clifton Toland and Santos Burger.

Mendoza further testified that the three men joined the two women in the car and they drove back to the Pompei Lounge. Defendant pulled the car into the bar parking lot, blocking a car occupied by two men who defendant said were the ones that jumped him in the bar. Defendant, Toland and Burger got out of the car. Mendoza testified that defendant went to the driver's side of the car and asked "are you the one that hit me?". One of the men in the car replied "yes, sorry", to which defendant replied "I'm sorry too" and then immediately fired his gun. Defendant, Toland and Burger ran back to the car. Mendoza testified that the man who was sitting in the driver's seat (Hazime) got out and ran towards the front door of the lounge. In a prior statement to police, Men-

doza stated that: 1) defendant said he shot a man (Berry), and 2) Toland said he stabbed one of the men (Hazime).

Defendant took the stand and testified that on the morning of the 24th, he and Mendoza were dancing when Mendoza noticed that two men were hassling Katrina Perez at the table. While Mendoza went to the restroom, defendant went to the table and asked the two men to leave. Defendant said that "two Arabs" called him a "Spic" and slapped him twice. The bouncer walked over to the table and cooled things down, but five to eight men returned to the table and "jumped him", giving defendant blows to the back and head. As the bouncer escorted them out of the bar, defendant offered to fight them "one-on-one" in the parking lot.

Defendant further testified that he returned home to get his friends Toland and Burger. Defendant brought along a gun in case his attackers had a weapon. He testified that as he pulled into the bar parking lot he saw two of the men who had hit him. Defendant claimed that he got out of the car and approached the passenger side of the car. Defendant retreated when he saw one of the men (Berry) bend down as if reaching for a weapon under the seat. As Berry started to sit back up, defendant panicked and fired the gun, because he thought his life was in danger. Defendant claimed that he did not bring the gun with the intent to kill, and only fired the gun with the intent to wound.

Ronald Donnelly, bouncer at the Pompei Lounge, corroborated defendant's claim that the men hassled defendant and hit him in the bar. He admitted that defendant vowed to return and "get the Arabs". Later Donnelly found Hazime's body near the front door of the lounge, and found

Berry's body in a car in the parking lot. He testified that while both men had been inside the bar, neither was involved in the earlier altercation with the defendant.

Both men were pronounced dead upon arrival at Oakwood Hospital. Medical Examiner Werner Spitz, M.D., conducted the autopsies on the two men. Adel Berry received a gunshot wound to the left arm and chest. The path of the bullet discredited defendant's testimony that he approached the passenger side of the car. Mohammed Hazime suffered a single stab wound to the left chest which penetrated the heart. Based upon the nature of the wound, Dr. Spitz opined that it was a sudden, spontaneous and surprise stabbing. He found no trace of alcohol or drugs on either victim. This confirmed the testimony of the family members of the victims that neither Berry nor Hazime drank alcohol because it was against their religion. The testimony of the investigative officers and hospital personnel revealed that no weapons were found in the victims' car or on their bodies.

Neither Toland nor Burger testified at the trial. They were also separately charged in the murders of Berry and Hazime. During one of those trials, Katrina Perez was determined to be an accomplice, thus she did not testify.

Defendant's first claim is that the trial court erred by failing to instruct the jury that there is an "imperfect" defense to first-degree murder.

In the instant case, defendant neither requested an instruction on the qualified right to self-defense nor did he object to the instructions as given. A failure to object to a jury instruction will not preclude appellate review if a manifest injustice will result. *People v Murphy,* 126 Mich App 379, 381; 337 NW2d 70 (1983). As explained in *People v*

*Delaughter,* 124 Mich App 356, 359-360; 335 NW2d 37 (1983):

"Pursuant to court rule, no party may assign as error the failure to give an instruction unless he specifically objects at trial thereto. GCR 1963, 516.2. The failure of a court to instruct on any point of law in a criminal trial is not a ground for setting aside a guilty verdict unless the instruction was requested by defendant or his counsel. MCL 768.29; MSA 28.1052. Nevertheless, to assure that an accused will not be erroneously convicted of crimes, this Court has developed the policy of reviewing jury instructions in their entirety to prevent any manifest injustice." (Citations omitted.)

Our review of the jury instructions reveals that the court properly instructed the jury on self-defense. We have considered the evidence presented at trial in light of defendant's claim and, in our opinion, defendant would not have been entitled to an instruction on the qualified right to self-defense. It was defendant's position at trial that the men in the automobile were the initial aggressors and defendant fired in self-defense while retreating from the car because he thought one of the victims had a weapon and, thus, defendant's life was in danger. The qualified right to self-defense focuses upon whether the defendant would have had a right to self-defense but for his actions as the initial aggressor. See *People v Springer,* 100 Mich App 418; 298 NW2d 750 (1980), *remanded on other grounds* 411 Mich 867; 306 NW2d 100 (1981), *rev'd on other grounds* 417 Mich 1060; 335 NW2d 906 (1983).

Defendant's next claim is that the trial court erred in failing to instruct the jury that manslaughter is an intentional killing.

The trial court instructed the jury on the elements of first and second-degree murder and vol-

untary manslaughter. The jury was also instructed that specific intent was required to commit first-degree murder, but was not necessary for second-degree murder or voluntary manslaughter. The court did not, however, instruct the jury that "general intent" is required for second-degree murder and manslaughter.

No objection was raised to the trial court's instructions. Nevertheless, we will review the instructions to determine if there was error requiring reversal because an erroneous "intent" instruction may result in a miscarriage of justice. *People v Doss,* 122 Mich App 571; 332 NW2d 541 (1983), *lv den* 417 Mich 1100.16 (1983); *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974).

An essential element of voluntary manslaughter is that the defendant must have had the intent to either kill or commit serious bodily harm. *Delaughter, supra; Townes, supra.* In the instant case, the jury was instructed on first and second-degree murder, pursuant to CJI 16:2:01 and 16:3:01. The instructions on voluntary manslaughter were given as a lesser-included offense, pursuant to CJI 16:4:02. The *Delaughter* Court held:

"When CJI 16:4:02 is given immediately after the giving of CJI 16:3:01, there is little danger that the jury would be led astray by the failure to include the intent element within CJI 16:4:02. * * * The giving of CJI 16:4:02 informed the jury that voluntary manslaughter occurs when a killing which would otherwise be murder takes place when the defendant is under the influence of passion. The combination of giving CJI 16:4:02 after CJI 16:3:01 is sufficient to apprise the jury that a conviction of voluntary manslaughter requires that the defendant had the intent either to kill or do serious bodily harm." *Delaughter,* p 360.

Although, in the instant case, instructions on

aiding and abetting were given between CJI 16:3:01 and 16:4:02, we believe that the jury would not have been confused or misled in finding the necessary intent for manslaughter and no manifest injustice occurred.

Defendant also claims that there was insufficient evidence to support a conviction for the murder of Hazime based on the prosecution's theory of aiding and abetting in the commission of the offense.

The standard of review for a sufficiency of the evidence claim is whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), *cert den* 449 US 885 (1980); *People v Robbins,* 131 Mich App 429; 346 NW2d 333 (1984).

One who procures, counsels, aids or abets in the commission of an offense may be tried and convicted as if he directly committed the offense. MCL 767.39; MSA 28.979. The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime. *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974); *People v Cortez,* 131 Mich App 316; 346 NW2d 540 (1984); *People v Turner,* 125 Mich App 8; 336 NW2d 217 (1983). Mere presence, even with knowledge that an offense is about to be committed, is not enough to make one an aider or abettor. *People v Burrel,* 253 Mich 321; 235 NW 170 (1931); *Turner, supra.* To be convicted, the defendant must either himself possess the required intent or participate while knowing that the principal possessed the required intent. *Turner, supra; People v Karst,* 118 Mich App 34; 324 NW2d 526 (1982); *People v Triplett,* 105 Mich App 182; 306 NW2d 442 (1981), *remanded on other grounds* 414 Mich 898; 323

NW2d 7 (1982). First-degree murder is a specific intent crime. Thus, in order to convict the defendant, the prosecutor had to establish that defendant possessed the specific intent to murder Hazime or that defendant knew that Clifton Toland possessed the specific intent. Defendant's specific intent or his knowledge that Toland had the specific intent could be inferred from circumstantial evidence. *Karst, supra; People v Kramer,* 108 Mich App 240; 310 NW2d 347 (1981).

In the instant case, the evidence adduced at trial was sufficient to prove that defendant aided or abetted in the killing of Hazime. There was testimony that defendant returned to the lounge with the sole purpose to "get the Arabs". Defendant himself testified that instead of fighting with the men immediately after the incident in the bar he returned home to get two friends and a gun. We believe there was sufficient evidence to establish that defendant entertained the requisite specific intent to kill both Hazime and Berry. Therefore, a rational trier of fact could have found that defendant possessed the specific intent to kill Hazime.

Defendant's underlying argument is also without merit. Because both parties agreed that the principal's state of mind was not in issue at trial and defense counsel noted that there was no evidence from which the jury could make that determination, under the aiding and abetting theory the jury would have had to have found that defendant possessed the requisite specific intent to kill Hazime. Defendant was not harmed by an instruction which limited the jury's ability to find specific intent under an aiding and abetting theory.

Defendant's last claim is that he was denied the effective assistance of counsel under both the Michigan (Const 1963, art 1, § 20) and United States Constitutions (US Const, Am VI).

In *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977), the Michigan Supreme Court set forth a bifurcated test for ineffective assistance of counsel claims.[1]

Recently, in *Strickland v Washington,* — US —; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court set forth the standards to be used by a court for reviewing an ineffective assistance of counsel claim under the Sixth Amendment. The defendant must identify "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment". 104 S Ct 2066. Counsel's performance is to be evaluated in light of prevailing professional norms and the defendant must make two showings: (1) "[t]hat counsel's performance was deficient". 104 S Ct 2064. It must be shown "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

[1] The standards under each prong of the test are discussed in *People v Coyle,* 104 Mich App 636; 305 NW2d 275 (1981), *lv den* 415 Mich 851 (1982), as follows:

"In Michigan, the merit of claims of ineffective assistance of counsel is determined by applying a bifurcated test. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977). The first branch of the inquiry focuses on the Sixth Amendment right to counsel, for which the Supreme Court has endorsed the standard established in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). *People v Garcia, supra,* 264. To satisfy defendant's right to counsel, his lawyer 'must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.' *Id.* Aside from reviewing the overall performance of counsel, an appellate court will also examine particular mistakes of counsel to safeguard defendant's right to a fair trial, which is the other branch of the inquiry. For this purpose, the *Garcia* Court adopted the standard developed in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969):

" 'However, even where assistance of counsel satisfies the constitutional requirements defendant is still entitled to a fair trial. Defendant can be denied this right if his attorney makes a serious mistake. But a court should not grant a new trial unless it finds that but for this mistake defendant would have had a reasonably likely chance for acquittal.' *Garcia, supra,* 266." 104 Mich App 639.

defendant by the Sixth Amendment". 104 S Ct 2064; and (2) it must be shown by the defendant "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 104 S Ct 2064. The test here is "but for counsel's unprofessional errors, the result of the proceeding would have been different". 104 S Ct 2068. A finding of reasonable probability is necessary. 104 S Ct 2069. However, the trial court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies". 104 S Ct 2069-2070.

In our opinion, because *Strickland* now applies to a federal constitution Sixth Amendment claim, to the extent that the *Beasley* standard in *Garcia* conflicts with *Strickland,* we believe that *Strickland* must be followed for federal claims. However, for state constitution ineffective assistance claims, we believe that the *Garcia* test must be followed until the Michigan Supreme Court states otherwise. Addressing the state constitution ineffective assistance claim raised in the instant case, after a thorough review of counsel's overall performance as required by *Garcia,* we find that counsel's performance was constitutionally adequate.

As a result of our review of all of defendant's allegations of error, mistakes and/or omissions committed by defense counsel, we also find under *Garcia* that either there were no errors at all (counsel's alleged omissions were matters of trial strategy) or, when there were errors, they were minimal and defendant would not have had a reasonably likely chance for acquittal. Evaluating

defendant's federal claim under *Strickland,* we find that the defendant has not shown any actual prejudice.

Affirmed.