PEOPLE v YOUNGBLOOD

Docket No. 88177. Submitted January 22, 1987, at Lansing. Decided
    January 4, 1988. Leave to appeal applied for.

Deborah Youngblood and Harold Jones were charged with mur-
    der in the first degree. Following a jury trial in Recorder's
    Court of Detroit, Joseph A. Gillis, J., Youngblood was convicted
    of murder in the second degree, while Jones was acquitted. The
    theory of the prosecution was that Jones and Youngblood,
    along with two other armed men, entered the apartment of one
    Anthony Porter, engaged in an exchange of gunfire with Por-
    ter, and, as a result of that gunfire, the victim, who had been
    visiting Porter's apartment, was shot and killed. The prosecu-
    tion proceeded on the theory that Jones and Youngblood came
    to Porter's apartment with the intent to commit the premedi-
    tated and deliberate murder of Porter and that the fatal shot
    had been fired by Jones with that intent. At the close of
    testimony, Youngblood moved for a directed verdict on the first-
    degree murder charge. The trial court denied the motion and,
    thereafter, charged the jury on first-degree murder. The court
    also charged the jury on aiding and abetting and transferred
    intent. Youngblood appealed.

    The Court of Appeals *held:*

    1. The testimony concerning the fact that Youngblood had
    recently broken off a ten-year relationship with Porter, coupled
    with the fact that she was the beneficiary of a life insurance
    policy on Porter's life and that she had called Porter shortly
    before coming to his apartment to find out if he was there, was
    sufficient to allow the jury to conclude, beyond a reasonable
    doubt, that Youngblood and Jones possessed a premeditated
    and deliberate intent to kill Porter.

    2. It was error for the trial court to give the transferred

REFERENCES

Am Jur 2d, Criminal Law §§ 163 *et seq.*

Am Jur 2d, Evidence §§ 163, 246, 1091, 1125.

Am Jur 2d, Homicide §§ 10, 11, 71.

Acquittal of principal, or his conviction of lesser degree of offense,
    as affecting prosecution of accessory, or aider and abettor. 9
    ALR4th 972.

Homicide: presumption of deliberation or premeditation from the
    fact of killing. 86 ALR2d 656.

intent charge, because, assuming that Jones fired the fatal shot, there was absolutely no evidence presented which would imply that Jones did so with the intent of killing Porter. The doctrine of transferred intent was therefore inapplicable, since it was not established by competent evidence that the act resulting in the killing was done with the requisite intent. Accordingly, first-degree murder ·was not shown and the directed verdict on that charge should have been granted.

3. The statement given by Youngblood between the time of her arrest and her arraignment was not barred by the exclusionary rule, since it was volunteered and thus not a result of a statutorily unlawful detention.

4. Even though Jones was acquitted, Youngblood could still be convicted of aiding and abetting, since the evidence clearly indicates that a crime was committed and there was evidence sufficient to conclude that defendant aided and abetted in that crime.

Reversed and remanded.

1. HOMICIDE — EVIDENCE — PREMEDITATION AND DELIBERATION — INFERENCES.

Premeditation and deliberation may be inferred from the surrounding circumstances, including prior relationships tending to show motive, a murder weapon acquired and positioned in preparation for homicide, evidence in the record supporting the inference that the killer transported the victim to a secluded location for an illicit or criminal purpose, circumstances surrounding the killing suggesting premeditation and deliberation, and organized conduct subsequent to the killing suggesting the existence of a plan.

2. HOMICIDE — SPECIFIC INTENT — TRANSFERRED INTENT.

It is error to instruct a jury on the doctrine of transferred intent in a homicide trial where there is not competent evidence that the fatal shot was fired with the necessary specific intent directed toward one other than the victim.

3. CRIMINAL LAW — EVIDENCE — UNLAWFUL DETENTION — EXCLUSIONARY RULE.

The exclusionary rule does not bar the admission at trial of evidence which had been acquired absent exploitation of a statutorily unlawful detention; accordingly, a statement volunteered by an accused during such detention, where there has been no questioning or prompting by the police, is not barred by the exclusionary rule.

4. CRIMINAL LAW — PRINCIPALS — ACCESSORIES.

The conviction of a principal is not a prerequisite to a valid conviction of an aider and abettor; the state need only introduce legally sufficient evidence that the crime was committed by someone and that the defendant either committed or aided and abetted the commission of that crime.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Jack J. Kraizman,* for defendant.

Before: M. J. KELLY, P.J., and SAWYER and M. R. KNOBLOCK,* JJ.

M. R. KNOBLOCK, J. Defendant and Harold Jones were charged with first-degree murder, MCL 750.316; MSA 28.548. Following a joint jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549. Jones was acquitted. Sentenced to a prison term of from ten to forty years, defendant appeals as of right from her conviction.

The victim was shot at Anthony Porter's residence. Porter was present inside the residence when the shooting occurred, but did not witness the shooting. According to Porter, defendant was his former girlfriend. She telephoned him the evening of the shooting and told him that she was coming over. Porter advised her not to come. When asked who else was in the residence, Porter refused to tell her. Approximately fifteen minutes after receiving defendant's call, Porter's doorbell rang. Porter spoke with the person at his door

---

* Circuit judge, sitting on the Court of Appeals by assignment.

using an intercom system located in his back bedroom. Recognizing defendant's voice, Porter told the victim to let defendant into the residence. The victim was in the front part of the residence at the time. Porter started walking down the hallway leading from his bedroom to the living room when he saw defendant, Jones, and two unidentified men enter. Porter claimed that Jones was holding the victim and had a small caliber pistol pointed at the victim's head. The other two men were also carrying weapons, either shotguns or rifles. Porter went back to his bedroom and armed himself with a .38 caliber pistol and a .22 caliber pistol. When defendant called for Porter to come out of his bedroom, Porter started shooting from the door of his bedroom and shots were fired at him. At trial, Porter claimed that Jones and defendant had taken the victim into the kitchen before he started shooting. This testimony contradicted Porter's statement at the preliminary examination that Jones moved the victim into the kitchen after Porter fired.

Defendant and Porter had lived together for ten years before their recent breakup. While together, they had taken out life insurance policies naming each other as the primary beneficiary. Porter admitted that he had heard that defendant was seeing Jones. Porter also admitted that drug paraphernalia was found in his residence, but denied that he was a drug dealer. Porter claimed that he told police at the scene that defendant was involved in the shooting. He did not remember whether he also told them that Jones was involved. Porter claimed, however, that he identified Jones at the police station.

The police officers who questioned Porter at the scene testified that Porter described the person holding the victim as an unknown black male.

They remembered Porter telling them that a female was involved in the shooting, but admitted that their reports did not include this information. One of the officers testified that Porter had said that an unknown black male had called for him to come out of his bedroom.

Porter's neighbor testified that she looked out her window after hearing gunshots and saw a woman she identified as defendant leaving Porter's residence. While it was dark, the neighbor claimed that she recognized defendant by her distinctive gait. The neighbor admitted that she had not previously identified defendant as the woman she saw leaving the apartment.

An evidence technician testified that the victim was found lying in the kitchen with his legs extending into the hallway. He had a single bullet wound through the right side of his head and was lying in a pool of blood. Because there was no blood trail, the technician opined that the victim had been shot close to where he had fallen. The technician further testified that bullet holes were found throughout the residence. Several of the bullets had been fired from the back bedroom in the direction of the dining room and kitchen. Shots were also fired towards the back bedroom. In his opinion, the victim could have been struck by a bullet coming from the back bedroom. The medical examiner testified that the fatal shot was fired from a distance of at least eighteen inches, as there was no gunpowder residue on the victim's head or in the wound. It was stipulated at trial that a single .22 caliber bullet was removed from the victim's body.

At the close of testimony, defendant moved for a directed verdict on the first-degree murder charge. The trial court denied the motion, finding that there was sufficient evidence from which a ra-

tional trier of fact could find beyond a reasonable doubt that defendant was guilty of first-degree murder. Defendant claims that this was error requiring reversal because there was no evidence introduced at trial which supported a finding that defendant or her codefendant Jones had acted with a premeditated and deliberate intent to kill the victim. Although she was found guilty of second-degree murder, citing *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), defendant asserts her chance of acquittal on a valid charge was substantially reduced by the possibility of a compromise verdict.

Defendant was prosecuted for first-degree murder on the theory that she was an aider and abettor.

> The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime. *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974); *People v Cortez,* 131 Mich App 316; 346 NW2d 540 (1984); *People v Turner,* 125 Mich App 8; 336 NW2d 217 (1983). Mere presence, even with knowledge that an offense is about to be committed, is not enough to make one an aider or abettor. *People v Burell,* 253 Mich 321; 235 NW 170 (1931); *Turner, supra.* To be convicted, the defendant must either himself possess the required intent or participate while knowing that the principal possessed the required intent. *Turner, supra; People v Karst,* 118 Mich App 34; 324 NW2d 526 (1982); *People v Triplett,* 105 Mich App 182; 306 NW2d 442 (1981), *remanded on other grounds,* 414 Mich 898; 323 NW2d 7 (1982). [*People v Vicuna,* 141 Mich 486, 495-496; 367 NW2d 887 (1985).]

To convict of first-degree murder, the prosecution

was required to prove beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Burgess,* 96 Mich App 390; 292 NW2d 209 (1980), lv den 409 Mich 912 (1980). Accordingly, in order to avoid a directed verdict, the prosecutor was required to show that at the time of the shooting the defendant either had the premeditated and deliberate intent to kill the victim or that she participated knowing that the principal possessed this specific intent. Premeditation and deliberation may be inferred from the facts and circumstances surrounding the killing, including: motive, as the result of a prior relationship between the parties, a weapon acquired and positioned in preparation for the homicide, circumstances and events surrounding the killing, and organized conduct prior or subsequent to the killing suggesting the existence of a plan. *Burgess, supra* at 400; *People v Germain,* 91 Mich App 154, 165; 284 NW2d 260 (1979). In the present case there was evidence introduced at trial that the defendant and Porter had recently separated after a ten-year relationship and that defendant was a beneficiary of an insurance policy on Porter's life, thereby providing her with a motive. Secondly, the defendant's and Jones' actions in attempting to determine if Porter was home alone by telephoning him in advance, going to Porter's home while armed and accompanied by armed men, and attempting to call him from the safety of his bedroom upon their arrival, all point to the existence of a premeditated plan. We are satisfied that this evidence, as the prosecution maintains, was sufficient to allow the jury to conclude, beyond a reasonable doubt, that defendant and Jones possessed a premeditated and deliberate intent to kill *Porter.* The trial court concluded, and instructed

the jury, that under the doctrine of transferred intent, this intent could be considered sufficient to satisfy the intent requirement as to the killing of the actual victim.

The doctrine of transferred intent has been explained as follows:

> In the unintended-victim (or bad-aim) situation —where A aims at B but misses, hitting C—it is the view of the criminal law that A is just as guilty as if his aim had been accurate. Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C. And if A aims at B with a first-degree-murder state of mind, he commits first degree murder as to C, by the majority view. So too, where A aims at B with intent to injure B but, missing B, hits and injures C, A is guilty of battery of C. [LaFave & Scott, Handbook on Criminal Law, ch 3, § 35, pp 252-253, quoted in *People v Lovett,* 90 Mich App 169, 171; 283 NW2d 357 (1979), lv den 407 Mich 884 (1979).]

As indicated above, there was no direct evidence as to who actually shot the victim. Assuming for the moment that there was sufficient circumstantial evidence to support the conclusion that Jones fired the fatal shot, there was absolutely no evidence presented which would imply that he did so with the intention of killing Porter. The doctrine of transferred intent was therefore inapplicable, since it was not established by competent evidence that the act that resulted in the killing was done with the requisite intent. Because there was insufficient evidence presented to establish first-degree murder, we conclude that the trial court committed error requiring reversal in denying the motion for a directed verdict as to that charge.

The remaining issues raised by defendant merit

little discussion. First, the trial court did not err in ruling that a statement obtained from defendant prior to her arraignment eighteen hours after her arrest was admissible. The exclusionary rule does not bar the admission at trial of evidence which has been acquired absent exploitation of a statutorily unlawful detention. *People v Mallory,* 421 Mich 229, 241; 365 NW2d 673 (1984). The police did not exploit defendant's detention. Defendant's statement was volunteered and there was no questioning or prompting by police. Defendant also argues that it was improper for the jury to convict defendant as an aider and abettor while acquitting the principal defendant. However, the conviction of a principal is not a prerequisite to a valid conviction of an aider and abettor. The state need only introduce legally sufficient evidence that the crime was committed by someone, and that the defendant either committed or aided and abetted the commission of that crime. *People v Brown,* 120 Mich App 765, 770-772; 328 NW2d 380 (1982). Here, the testimony clearly indicates that a crime was committed, and there was sufficient evidence to conclude that defendant aided and abetted in that crime. Further, the prosecutor introduced sufficient evidence to indicate that codefendant Jones was the principal.

Reversed and remanded.