Joshua D. PUCKETT Petitioner—Appellant,

v.

Patricia L. COSTELLO Respondent—Appellee.

No. 02–1565.

United States Court of Appeals, Sixth Circuit.

Sept. 9, 2004.

Mark J. Kriger, Detroit, MI, for Petitioner–Appellant.

Debra M. Gagliardi, Asst. Atty General, Office of the Attorney General Corrections Division, Janet A. Van Cleve, Office of the Attorney General Habeas Corpus Division, Lansing, MI, for Respondent–Appellee.

Before: MOORE and ROGERS, Circuit Judges; and FORESTER, District Judge.*

## OPINION

FORESTER, District Judge.

A jury convicted the Appellant, Joshua D. Puckett, of first-degree murder and possession of a firearm during the commission of a felony. Puckett received consecutive prison sentences of two years and life without the possibility of parole for his offenses. The Michigan Court of Appeals affirmed Puckett's conviction on direct appeal and the Michigan Supreme Court denied leave to appeal. Puckett subsequently petitioned the United States District Court for the Eastern District of Michigan for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied Puckett's petition. Puckett now appeals, arguing that no rational trier of fact could have found him guilty of first-degree mur-

der because the evidence adduced at trial did not establish that he possessed the requisite intent to kill. For the following reasons, we AFFIRM.

## I. FACTUAL BACKGROUND

On November 9, 1995, Puckett gathered with Roger Cameron, Brian Lehtimaki, James Flatt and Daniel Broyles at Cameron's residence in Garden City, Michigan. At the time, Puckett claimed membership in the Insane Gangster Mafia while Cameron and Lehtimaki claimed membership in the Gangster Disciples. The group spent much of the evening socializing, drinking, and smoking marijuana. At some point, Cameron produced a recently-acquired firearm—an SKS semi-automatic assault rifle—and expressed a desire to use it.

Later in the evening, the group began discussing a rival gang, the Cash Flow Posse. The conversation began with talk about fighting with members of the Cash Flow Posse, but deteriorated into talk about the possibility of a drive-by shooting. The group ultimately decided to travel to Detroit, Michigan to party. Before setting out, someone placed the SKS assault rifle in the trunk of Puckett's car. Puckett, Flatt and Cameron traveled in Puckett's car while Broyles and Lehtimaki traveled in Broyles' car.

The group ended up at a flat on Wendell Street in southwest Detroit. A small group, which included Hillary Rogers and Adrian Alvarez, was already assembled at the Wendell Street flat. As everyone gathered together, a discussion began about the possibility of carrying out a drive-by shooting against the Cash Flow Posse. The group ultimately decided to direct a drive-by shooting at the basement

---

* The Honorable Karl S. Forester, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

apartment in a building where members of the Cash Flow Posse were known to congregate.

Broyles drove his car with Cameron in the front passenger seat, Rogers in the backseat behind Cameron, Flatt in the backseat behind Broyles, and Lehtimaki in the middle of the back seat. Cameron carried his SKS assault rifle and Flatt carried a shotgun that Puckett had procured earlier in the evening. Puckett drove his car and was accompanied by Alvarez and two other unidentified companions. Both cars proceeded to Stair Apartments, periodically passing each other or intersecting along the way.

After arriving at the Stair Apartments, Broyles circled the block several times. The participants have provided different explanations for this circling, but it appears that it was done to either locate the correct building or to wait for traffic to clear. On the final pass, Broyles slowed as he passed in front of the apartment building. Cameron leaned out the window and fired several shots. Angel Ramirez, a twelve-year-old girl who was sitting in a car in front of the apartment building with her mother and two other children, was struck in the head and killed. Examination of the scene revealed four bullet holes in the windows of the basement apartment, one bullet hole in the front door of the building, and one bullet hole in the window of a second apartment.

After Cameron fired the shots, Broyles sped away. He dropped Rogers off near the Wendell Street flat. Rogers took both guns and placed them alongside the flat. Puckett subsequently retrieved the guns.

## II. LEGAL FRAMEWORK

Clearly established United States Supreme Court precedent holds that the due process clause protects a criminal defendant from being convicted of a crime without proof beyond a reasonable doubt of every element of the offense. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution, and determine whether *"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."* *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* In applying the standard, we must make "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16.

Michigan law recognizes two degrees of murder—first-degree murder and second-degree murder. "[S]econd-degree murder is committed only if the actor entertains one of three possible intents: the intent to kill, the intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result." *People v. Dykhouse*, 418 Mich. 488, 345 N.W.2d 150, 151 (Mich. 1984). First-degree murder, on the other hand, is committed only when the actor has a premeditated and deliberate intent to kill. *Id.* "Because the law recognizes the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to sustain a conclusion that a defendant entertained the requisite intent." *People v. Strong*, 143 Mich.App. 442, 372 N.W.2d 335, 339 (Mich.Ct.App. 1985). "Intent may also be inferred from facts and circumstances established beyond a reasonable doubt." *Id.*

In the present case, Puckett's liability for Angel Lawrence's death was based on the theory that he aided or abetted the shooter, Cameron. Accordingly, in order for Puckett to be guilty of first-degree murder, the prosecution was required to prove "that at the time of the shooting [Puckett] either had the premeditated and deliberate intent to kill the victim or that [he] participated knowing that [Cameron] possessed this specific intent." *People v. Youngblood,* 165 Mich.App. 381, 418 N.W.2d 472, 475 (Mich.Ct.App.1988). The prosecution did not argue that either Puckett or Cameron intended to kill Angel Lawrence; instead it relied on the theory of transferred intent, arguing that Puckett and Cameron intended to kill rival gang members but killed Angel Lawrence instead. Puckett argues that the evidence adduced at trial did not form a sufficient basis for any rational fact finder to conclude that either he or Cameron possessed the requisite intent to kill.

## III. STANDARD OF REVIEW

In *Alley v. Bell,* 307 F.3d 380 (6th Cir. 2002), this Court articulated the following standard:

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court, unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court's decision. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner. *Id.* at 409–10, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 385. In considering Puckett's due process claim, the state court identified the correct legal standard, and concluded that the evidence adduced at trial was sufficient for a rational trier of fact to find the essential elements of first degree murder—including an intent to kill. Unpublished per curiam decision, Mich. Ct.App. No. 197601 at 2–3, J.A. at 100–01. Accordingly, habeas relief is warranted only if the state court applied that standard in an objectively unreasonable manner or if the state court's adjudication was based on an unreasonable determination of the facts based on the evidence presented.

The district court concluded that the state court's determination of the facts was reasonable, and that the state court's decision resulted in a reasonable application of federal law. Opinion and Order, Case No. 00–CV–73307–DT at 12–13, J.A. at 81–82. We review the district court's legal conclusions de novo. *See Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir.2000).

## IV. ANALYSIS

Puckett does not dispute the fact that Cameron's firing of the SKS assault rifle

was both deliberate and premeditated. Accordingly, the primary issue is whether there is sufficient evidence to allow a rational jury to find that Puckett either had an intent to kill or participated in the shooting knowing that Cameron had an intent to kill. In rejecting Puckett's contention that the evidence only established a plan to recklessly shoot at the apartment building rather than to intentionally shoot at particular people, the state court wrote as follows:

[T]here was evidence at trial that Puckett intended to shoot the rival gang with Cameron, that he helped bring the SKS rifle to Detroit and [that he] obtained another gun directly before the shooting. At the scene, while Puckett drove his car around the apartment building looking for witnesses and encouraging the action, in the second car Cameron pointed the rifle and shot at the apartment in which rival gang members were known to hang out and someone was seen outside. Puckett's planning, motive to shoot rival gang members, help with the rifle and support and encouragement at the shooting provide sufficient evidence of his premeditation and deliberation and are sufficient to show at least that Puckett knew of Cameron's intent to kill and aided and abetted him in accomplishing this intent. . . ."

Unpublished per curiam decision, Mich. Ct.App. No. 197601 at 2–3, J.A. at 100–01. The district court agreed, and concluded as follows:

"[A] rational juror could have concluded that [Puckett] assisted Cameron in a shooting directed at one or more persons, not a building. A reasonable juror could have inferred from testimony about [Puckett's] close relationship with Cameron, as well as the defendants' possession of an assault rifle, that [Puckett] intended to kill someone or knew that

Cameron intended to shoot and kill someone."

Opinion and Order, Case No. 00–CV–73307–DT at 12–13, J.A. at 81–82.

Neither the state court nor the district court addressed the distinction that exists between a specific intent to kill and an intent to either inflict great bodily harm or create a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. It is clear that firing an SKS assault rifle into an apartment building where people are known to congregate creates a very high risk of death or great bodily harm and that anyone who engages in such conduct knows that death or great bodily harm could result. In the present case, there was clearly sufficient evidence to prove that Cameron intended to shoot into the apartment building and that Puckett knew of Cameron's intent and assisted him with the act. Accordingly, there is no question that the evidence adduced at trial would have supported a second-degree murder conviction for Puckett. The relevant question, however, is whether there was sufficient evidence to support the first-degree murder conviction.

The evidence adduced at trial includes evidence upon which a rational trier of fact could base a verdict of guilty to the first-degree murder charge. Brian Lehtimaki testified that Puckett suggested that the group travel to Detroit to "party and do a drive-by." Lehtimaki described a drive-by as "driving the car and shooting somebody." Lehtimaki further testified that Puckett determined that the drive-by would be directed at the Cash Flow Posse and that Cameron would do the actual shooting. Hillary Rogers testified that Cameron directed the shooting at the basement apartment in the apartment building because Puckett knew that rival gang members lived and congregated in

that apartment. Daniel Broyles testified that Puckett led the discussion at the Detroit apartment about "shooting up the Cash Flows."

While this evidence might not overwhelmingly show that Puckett possessed an intent to kill or that he participated in the shooting knowing that Cameron had an intent to kill, we find that, taken together, it is sufficient evidence for a rational trier of fact to find Puckett guilty of first-degree murder. The issue is not whether we would convict Puckett of first-degree murder on the basis of this evidence, but whether the state court reasonably concluded that the evidence is sufficient for *any* rational trier of fact to make the decision. The Michigan Court of Appeals reasonably concluded that planning on "shooting up the Cash Flows" and conducting a drive-by shooting of the Cash Flows, combined with directing someone to fire multiple shots from an assault rifle into an apartment known to be inhabited by the Cash Flows, is sufficient evidence of a premeditated and deliberate intent to kill.

## V.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

MOORE, Circuit Judge, dissenting.

Because I do not believe that a rational trier of fact could have found Joshua Puckett guilty of first-degree murder, I respectfully dissent.

The majority properly asserts that the standard of review in this case is highly deferential to both the trier of fact and the state court. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir.2002). Nonetheless, the Michigan Court of Appeals's determination that there was sufficient evidence of intent for

a rational jury to find Puckett guilty of first-degree murder constitutes an unreasonable application of the sufficiency of the evidence standard in *Jackson. See* 443 U.S. at 319. The Michigan Court of Appeals's conclusion is untenable even under the most deferential standard of review for two reasons: First, because its opinion was supported in part by evidence not adduced at Puckett's trial; Second, because the evidence adduced at trial was insufficient to establish that Puckett possessed the specific intent to kill at the time of the shooting or that he participated in the "drive-by" with the knowledge that Cameron possessed such an intent.

Although Puckett and Cameron were tried together, the two were judged by separate juries. Petitioner's Br. at 3. While many witnesses testified before both juries, cross-examination of prosecution witnesses and the introduction of certain documents occasionally occurred before only one jury. On appeal before the Michigan Court of Appeals, however, the two cases were consolidated. *People v. Puckett*, No. 197601, 1, 1998 WL 1988952 (Mich. Ct.App. Nov. 3, 1998). Along with other evidence, the Michigan Court of Appeals relied on Puckett's presence at the scene while Cameron "shot at the apartment in which rival gang members were known to hang out and someone was seen outside" as proof that there was sufficient evidence regarding intent to kill to affirm Puckett's conviction. *Id.* at 4. To support its view that the defendants knew there were people near the apartment building before the shooting, the Michigan Court of Appeals pointed to the only evidence in the record supporting such a conclusion: (1) Cameron's statement to the police that he saw several Cash Flow Posse gang members outside a house near the apartment building just prior to the shooting; and (2) the testimony of a passenger in Cameron's car

that he saw someone duck down behind a car outside the building as Cameron fired. *Id.* at 2. Neither of these pieces of evidence, however, was introduced as part of Puckett's trial. Cameron's statement was introduced as evidence only before his jury and not before Puckett's jury, and the evidence indicates that none of the witnesses observed anyone in the area until after the shooting. Therefore, contrary to the Michigan Court of Appeals's conclusion, there is no evidence from which a trier of fact could infer that Puckett was aware of any people in the area prior to the shooting.

Additionally, the evidence is insufficient to satisfy the intent element required to convict Puckett of first-degree murder. In order to convict under an aiding and abetting theory of the offense, a trier of fact must find that Puckett either possessed the specific intent to kill or knew prior to the shooting that Cameron possessed this intent. *People v. Youngblood,* 165 Mich. App. 381, 418 N.W.2d 472, 475 (Mich.Ct. App.1988) (first-degree murder conviction requires proof "beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate"). I would agree that the evidence is sufficient to support a second-degree murder conviction. Puckett helped Cameron plan the shooting of the apartment where Cash Flow gang members were thought to hang out. J.A. at 206–10 (Tr. of Lehtimaki Test.). He also aided Cameron by supplying a firearm and looking out for witnesses. J.A. at 147–48 (Tr. of Broyles Test.); J.A. at 187 (Tr. of Flatt Test.). From these actions a rational juror could infer an "intent to create a very high risk of death" and convict Puckett of second-degree murder. *People v. Dykhouse,* 418 Mich. 488, 345 N.W.2d 150, 151 (Mich.1984).

The record lacks, however, any evidence beyond this which shows that Puckett's intent was to kill someone. At trial, not a single witness testified that the goal of the "drive-by" was to kill a rival gang member. There is no conclusive evidence suggesting that the intent was to murder a Cash Flow gang member. Rather, it appears the purpose of the "drive-by" was to merely shoot at a building where the Cash Flow Posse was thought to congregate. J.A. at 195 (Tr. of Flatt Test.). Additionally, there is no evidence that Puckett knew there would be anyone in the apartment or in the area at the time of the shooting. Nor is there any evidence that Puckett knew there were people near the building until after Angel Lawrence was shot. As a result of this dearth of evidence, it would be unreasonable to conclude that Puckett possessed a specific intent to kill.

Similarly, there is insufficient evidence for a reasonable trier of fact to conclude that Puckett participated in the "drive-by" knowing that Cameron possessed a specific intent to kill. Cameron never expressed an intent to kill any members of the Cash Flow Posse. On the contrary, prior to the shooting Cameron merely indicated that he was "itching" to try out his new rifle and "wanted to shoot it off." J.A. at 174 (Tr. of Flatt Test.). Puckett could not infer from these statements that Cameron intended to kill someone during the "drive-by." From these statements it is unclear whether Cameron's intent was even to shoot at someone. Finally, the fact that Cameron and Puckett traveled to Pitt Street in separate cars further emphasizes that Puckett had no way of knowing what Cameron's intent was at the time of the shooting. Thus, it would be unreasonable to conclude that Puckett possessed any knowledge of Cameron's intent, as there is a paucity of evidence from which this knowledge can be inferred. *See People v. Johnson,* 93 Mich.App. 667, 287 N.W.2d

311, 314 (Mich.Ct.App.1980) (noting that inferences as to state of mind "must have support in the record" and cannot be "arrived at by mere speculation").

In sum, the Michigan Court of Appeals failed properly to recognize the differing evidentiary burdens of first- and second-degree murder. Puckett's actions constitute a level of wanton disregard for human life sufficient to sustain a conviction of second-degree murder. The evidence in this case is insufficient, however, to suggest any specific intent beyond this. Therefore, I would grant Puckett's petition for writ of habeas corpus as the state court unreasonably applied the Supreme Court precedent of *Jackson v. Virginia.*