# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 8, 2015

Plaintiff-Appellee,

v

No. 323234
Saginaw Circuit Court
LC No. 13-039217-FC

DEMARCUS DELVONN REED,

Defendant-Appellant.

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

Defendant, Demarcus Delvonn Reed, appeals as of right his convictions, following a jury trial, of first-degree home invasion, MCL 750.110a, two counts of unlawful imprisonment, MCL 750.349b, two counts of armed robbery, MCL 750.529, second-degree criminal sexual conduct (CSC II), MCL 750.520c, three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b, two counts of felonious assault, MCL 750.82, resisting or obstructing a police officer, MCL 750.81d, and 11 counts of second-offense possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Reed to serve terms of 300 to 600 months' imprisonment for his home invasion convictions, 180 to 360 months' imprisonment for his unlawful imprisonment convictions, 600 to 900 months' imprisonment for his armed robbery convictions, 300 to 600 months' imprisonment for his CSC II conviction, 600 to 900 months' imprisonment for his CSC I convictions, 48 to 180 months' imprisonment for his felonious assault convictions, 46 to 180 months' imprisonment for his resisting arrest conviction, and a consecutive term of 60 months' imprisonment for his felony firearm convictions. Reed contends that the evidence linking his participation to the crimes, particularly the CSC I crime, was insufficient, and that counsel was ineffective for failing to challenge the sexual assault nurse examiner's testimony. We affirm.

## I. FACTUAL BACKGROUND

The male and female victims fell asleep while watching television at the male victim's home. According to the male victim, two men broke into the residence. The larger man was wearing all black, and the smaller man, who he identified later that evening as Reed, was wearing a red and black sweatshirt. The men told him to strip naked and lie on the floor, where they attempted to "hog-tie" him.

-1-

According to the female victim, two masked men with guns woke her, pulled her off the couch, and told her to remove her clothes. Both men participated in taking off her clothes while fondling her breasts and sexual areas. The larger man, who she later identified as codefendant James Brooks, held a gun to her head. The male victim pleaded with Brooks not to hurt the female victim, and Reed hit the male victim over the head with his gun. Brooks took the female victim to a bedroom and sexually assaulted her. She heard the male victim continue pleading and heard someone rummaging around in the living room.

According to the male victim, he called 911 on a cell phone that he had hidden. While Brooks and the female victim were in the bedroom, Reed took a television from the home and carried it outside. He believed that Reed also took his wallet and items of personal property.

According to Saginaw Township Police Officer Steven Wietecha, when he responded to the dispatch, he saw a man wearing a red and black sweatshirt running through a field near the home. Officer Wietecha chased the man into a wooded area and lost sight of him, but he got burrs on his uniform. Officer Russell Uphold testified that he also lost sight of the man after he went into the wood line.

Officer Wietecha testified that a tracking dog later followed the perpetrators' scent to a nearby Suburban truck that had plates registered to Breona Martin, Reed's girlfriend. The Suburban had a Brooks's Bridge card in the back seat. According to Martin, Reed called her at around 2:00 a.m. and asked her to pick him up on the east side of Saginaw and drive him to his car. She drove Reed to his Suburban, but when they arrived, the area had a lot of police officers nearby.

According to Saginaw Township Police Department Officer Michelle Fleming, she noticed that a white vehicle near the Suburban was acting suspiciously. She stopped Martin's vehicle and found a red and black hoodie with burrs on it in the car's trunk. Officer Wietecha identified Reed as the man he had chased through the wooded area. After officers took Reed into custody, the male victim identified Reed as one of the men involved in the robbery.

The jury found Reed guilty as described above. Reed now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Reed contends that insufficient evidence supported his identity as one of the perpetrators. Reed also contends that there was insufficient evidence that he aided Brooks in sexually assaulting the female victim. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Patterson*, 428 Mich 502, 525; 410 NW2d 733 (1987). We review de novo a defendant's claim that the evidence was insufficient to sustain his or her conviction. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). We must view the evidence in the light most favorable to the prosecution, drawing all reasonable inferences and resolving all credibility determinations in support of the jury's verdict. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). We will not interfere in the jury's role to determine the weight of the evidence and the credibility of the witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

First, Reed contends that the prosecution did not present sufficient evidence of his identity. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Circumstantial evidence and reasonable inferences from that evidence may support the jury's findings. *Nowack*, 462 Mich at 400. Positive identification by a witness may sufficiently prove a defendant's identity. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

In this case, there was ample evidence regarding Reed's identity. The male victim testified that Reed had been wearing a red and black sweatshirt. Officer Wietecha testified that, as he approached the home, he saw a man in a red and black sweatshirt running away from the home. Officer Wietecha chased the man into a wooded area and lost sight of him, but he got burrs on his uniform. A tracking dog led officers to a Suburban that Reed owned. Reed was apprehended after he returned to the Suburban and, in the back of the car he was riding in, officers found a red and black sweatshirt with burrs on it. Officer Wietecha identified Reed as the man he had chased into a wooded area, and the male victim identified Reed as one of the home invaders. Viewing this evidence in the light most favorable to the prosecution, it supported the jury's finding that Reed was one of the men who participated in the crimes.

Second, Reed argues that the evidence was insufficient to show that he aided Brooks in sexually assaulting the female victim because there was no evidence that he knew Brooks intended to commit the crime or that he aided or encouraged Brooks. We disagree.

A person who helps another commit a crime is just as guilty of the crime as the person who directly committed it:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense. [MCL 767.39.]

But a defendant's mere presence at the scene of a crime is not enough to support a conviction under an aiding and abetting theory. *People v Youngblood*, 165 Mich App 381, 386; 418 NW2d 472 (1988). The prosecution must establish that

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004) (quotation marks, citation, and brackets omitted).]

Circumstantial evidence may sufficiently prove the defendant's knowledge or intent. *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

In this case, evidence supported the jury's determination that Reed aided and abetted Brooks in sexually assaulting the female victim. Both victims testified that Reed touched the female victim's breasts and sexual areas. The male victim testified that he heard both Brooks and Reed state that they were going to sexually assault the female victim. When the male victim

attempted to interfere in the sexual assault, Reed struck him in the head with his weapon. We conclude that a reasonable jury could find that Reed knew that Brooks intended to sexually assault the female victim and aided him by preventing the male victim from interfering. Accordingly, the evidence was sufficient to support the jury's finding that Reed aided and abetted Brooks.

## III. INEFFECTIVE ASSISTANCE

Finally, Reed contends that he was deprived of the effective assistance of counsel when counsel failed to challenge Gatza's testimony that the female victim's injuries were consistent with the account she gave at the hospital. We disagree.

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). When the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012). To prove that his defense counsel was not effective, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51-52; 826 NW2d 136 (2012).

A witness may not opine about the defendant's guilt or innocence. *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013). Accordingly, an expert witness may not opine that a defendant sexually assaulted a particular victim. *People v Peterson*, 450 Mich 349, 374; 537 NW2d 857, amended 450 Mich 1212 (1995). However, a sexual assault nurse examiner may testify that a victim's injuries are or are not consistent with a victim's account of how the injuries were received. See *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003).

Counsel is not ineffective for failing to make a futile challenge. *Ericksen*, 288 Mich App at 201. In this case, Sue Gatza, a sexual assault nurse examiner, testified that the victim's account to Gatza at the hospital "was consistent with the injury that she had." Gatza did not render a legal conclusion about whether a sexual assault actually occurred, and she did not state an opinion about whether Reed committed it. Accordingly, the testimony was permissible opinion testimony, and trial counsel did not render ineffective assistance by failing to challenge it. Further, it is not reasonably likely that the result of the proceeding would have been different had counsel challenged the testimony because it was admissible opinion testimony.

We affirm.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Kurtis T. Wilder

-4-