# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

AMBER ROSE SMITH,

　　　　　Defendant-Appellant.

UNPUBLISHED
February 18, 2016

No. 325061
Emmet Circuit Court
LC No. 14-004001-FC

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals by right her convictions of first-degree premeditated murder, MCL 750.316, and possession of firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole for the first-degree murder conviction and a consecutive two years' imprisonment for the felony-firearm conviction. Because the prosecutor presented sufficient evidence to support defendant's first-degree murder conviction, we affirm.

Defendant's convictions arise from the murder of her boyfriend, Trenton Mallory, who was found shot to death in the home he shared with defendant. On appeal, defendant's sole argument is that there was insufficient evidence to support her conviction for first-degree murder because there was no evidence that she acted with premeditation and deliberation. She contends that, at most, her actions were sufficient to support a second-degree murder conviction.[1]

We review de novo a challenge to the sufficiency of evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d

---

[1] Defendant does not challenge her felony-firearm conviction, and it is plain that the evidence was sufficient to support that conviction. See MCL 750.227b.

-1-

78 (2000). "It is the jury's duty to determine the weight to be accorded any inferences," and we will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (quotation omitted). A passage of time between forming the initial homicidal intent and the ultimate action is necessary to establish premeditation and deliberation. *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). "However, the time required need only be long enough to allow the defendant to take a second look." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008) (citation and quotation marks omitted).

"Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Plummer*, 229 Mich App at 301. "Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself and, (4) the defendant's conduct after the homicide." *Unger*, 278 Mich App at 229. For example, use of a deadly weapon and the location of the wounds inflicted may be considered when assessing premeditation. *People v Coddington*, 188 Mich App 584, 600; 470 NW2d 478 (1991). "[O]rganized conduct prior or subsequent to the killing suggesting the existence of a plan" as well as a defendant's attempt to conceal the killing can also be used as evidence of premeditation. *People v Youngblood*, 165 Mich App 381, 387; 418 NW2d 472 (1988); see also *Gonzalez*, 468 Mich at 641. Further, a "preconceived motive" may serve as circumstantial evidence of premeditation. *People v Taylor*, 275 Mich App 177, 180; 737 NW2d 790 (2007).

In this case, viewing the evidence in a light most favorable to the prosecution, there was ample evidence of premeditation and deliberation. In terms of a preexisting relationship, defendant and Mallory were in a romantic relationship, they were living together at the time of Mallory's murder, and there was no evidence that anyone else came to the house on the day of the murder. Cf. *People v Coy*, 243 Mich App 283, 316; 620 NW2d 888 (2000). Defendant had a financial motive for the crime stemming from the couple's bleak financial state, of which Mallory was largely unaware. That is, they were several months behind on their mortgage payments, defendant's car had been repossessed, defendant had lost substantial sums gambling, defendant had begun to bounce checks, and they had several high interest loans. Notably, although defendant managed the couple's finances, many of these debts were solely in Mallory's name, and defendant told police that she could not be "tied" to Mallory's loans. From this evidence, it can be concluded that defendant had a motive to kill Mallory in the hopes of escaping these mounting debts. Indeed, after the murder, defendant took out another loan in Mallory's name, she began receiving survivor's benefits for her son, and evidence was found to show that defendant had been looking for a life insurance policy for Mallory and practicing Mallory's signature. There was also evidence that defendant contacted a former boyfriend before the murder about potentially rekindling their sexual relationship. This evidence of a preconceived motive serves as circumstantial evidence of premeditation. See *Taylor*, 275 Mich App at 180; *Unger*, 278 Mich App at 231.

Moreover, the circumstances of the shooting demonstrate premeditation and deliberation. The evidence clearly established that Mallory died while lying down in his bed. He died from a single gunshot wound to the head, just above his left ear. In addition, according to defendant's statements to police, the guns in the home were kept unloaded for the safety of the children and the ammunition was stored "away" from the guns. A testifying police officer explained that there were "four or five steps" to load the murder weapon, and that these steps would take a "couple minutes" to complete. From this, it can be inferred that defendant took the time to gather the gun and ammunition, to load the gun, and to then shoot Mallory at close range while he slept. "One cannot, under normal circumstances, kill a sleeping person at close range in any fashion other than with premeditation, especially when the person is a close companion and benefactor." *People v Bowman*, 254 Mich App 142, 152; 656 NW2d 835 (2002). Indeed, there was no evidence of any fight or conflict between the couple prior to the shooting under which an unpremeditated killing might occur. Cf. *id.* Rather, with Mallory sleeping, defendant had the time to load the gun, point the gun at the sleeping victim, and fire. Within those undisturbed moments, defendant had time to pause and "take a second look." See *Unger*, 278 Mich App at 229.

Aside from the shooting itself, defendant's organized actions the day of the murder bespoke a carefully laid plan to carry out and conceal the murder. See *Gonzalez*, 468 Mich at 641; *Youngblood*, 165 Mich App at 387. For example, there was evidence that the family's dogs, which usually slept with Mallory, had been put in the barn despite the frigid temperatures on the day of the murder. Further, defendant took precise actions the day of the murder: staging the home to create the appearance of a break-in, running errands and keeping receipts to provide to the police, taking her son to school uncharacteristically early, sending Mallory text messages, and posting on Facebook about her activities that morning in an apparent effort to create an alibi. She ultimately returned home, pretended to uncover a break-in, and called 911. She endeavored to hide the murder weapon by removing postings of the gun from the Internet and by burying the weapon in the snow. When her sister discovered the gun and called her, defendant said that she had placed the gun in the snow. Subsequently, she told her sister that there had been some confusion, and that she wanted to purchase a gun from someone named "Snow." These circumstances surrounding the crime, including defendant's efforts at concealment, support the inference that she acted with premeditation and deliberation. See *Gonzalez*, 468 Mich at 641.

In sum, viewed in a light most favorable to the prosecution, the evidence demonstrates beyond a reasonable doubt that defendant intentionally killed Mallory and that defendant committed the killing with premeditation and deliberation. See *Bennett*, 290 Mich App at 472. Thus, the evidence was sufficient to support defendant's first-degree murder conviction.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly