*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LENNY JESSIE WHITFIELD,

Defendant-Appellant.

UNPUBLISHED
May 19, 2022

No. 356049
Macomb Circuit Court
LC No. 2020-000400 FC

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of his right his conviction for first-degree premediated murder, MCL 750.316, following a bench trial. Defendant also was convicted of four counts of assault with intent to murder, MCL 750.83; four counts of felony-firearm, second offense, MCL 750.227b; and one count of felon in possession of a firearm, MCL 750.224f. However, defendant appeals only his first-degree murder conviction. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to life in prison without the possibility of parole for the first-degree murder conviction; five years in prison for the felony-firearm convictions; 30 to 60 years in prison for the assault with intent to murder convictions; and 25 to 60 years in prison for the felon in possession of a firearm conviction. Defendant argues on appeal that the prosecution did not satisfy its burden of proof to show deliberation for the charge of first-degree murder, and therefore, the evidence was insufficient to sustain his conviction for that offense. We affirm.

## I. FACTS

On the night of October 11, 2019, defendant, along with his neighbor, went to the Last Call bar in Eastpoint for some drinks after work. Defendant had six large beers. After a short altercation involving defendant lighting up a cigarette, he ordered a "shot tray special" that included 10 to 15 double shots as well as some Bud Lights. After more altercations with other patrons and as a result of being drunk, one of the bar's bouncers, Mr. Sullivan, confronted defendant at some point before 2 a.m. and told him to leave.

A few minutes after being ejected from the bar, defendant returned with a beer from outside the Last Call and attempted to enter the bar. This escalated the confrontation, and defendant

verbally threatened the bouncer and his family, saying that it would involve shooting a gun. This led to the bouncer hitting defendant with a closed fist and knocking him to the ground, where the bouncer continued to beat him.[1]

After the beating from the bouncer, defendant walked back to his vehicle, where he sat inside waiting for possible further developments. Defendant then rummaged through his vehicle's hood where he recovered a handgun, that was wrapped in a plastic bag to keep it clean, from the car's air vent. Defendant began walking back to the bar with the handgun when he heard voices in his ears. The voice he heard in his left ear told him that he would go to jail and the loud voice in his right ear shouted "I don't give a f---." The defendant then opened fire with the handgun, aiming at the entrance of the bar.

Defendant fired from the parking lot towards the two front doors of the bar. He shot until the handgun stopped firing rounds, but victims and eyewitnesses heard defendant continue to pull the trigger. After the shooting, defendant quickly ran to his vehicle with his neighbor and drove away in a hurry. After dropping his neighbor off, defendant went home, showered, and went to bed. Later that night, the police came to defendant's home with a search warrant, and defendant later testified that he felt relieved when he was arrested.

There were multiple victims involved in the shooting, but the fatal shooting of Jared Glenn is the focus of defendant's appeal. Defendant was charged with first-degree murder for Glenn's death, who was shot and killed by a bullet to the head. The bullets and shell casings found at the crime scene were determined to be from defendant's handgun.

While defendant testified that he was disorientated after the altercation with the bouncer, he still retrieved his gun from the hood of his car because he thought that people were chasing him. When asked about the shooting itself, defendant claimed that he was simply shooting to shoot.

At the conclusion of the bench trial, the trial court found beyond reasonable doubt that defendant was guilty of first-degree murder. The trial court explained that defendant used a firearm, an inherently dangerous weapon, and fired an excessive number of shots at the group of about 20 people gathered at the front doors of the bar. In addition, the trial court noted, there were seven gunshot wounds from the six shots fired, which belied defendant's testimony that he was unable to clearly see the area at which he was shooting.

The trial court further explained that the surveillance video showed defendant head back to his vehicle after being assaulted by the bouncer. Within a minute, defendant's friend appeared at the vehicle as well, thus giving defendant no apparent reason to head back to the bar. The trial court stated that "[t]he only reason to stick around was to get payback." The trial court observed that defendant discarded his jacket, used cars to mask his approach, concealed his handgun, and used a traditional shooting position. According to the trial court, these facts demonstrated that defendant was methodical in executing his plan to ambush and shoot at the people in the entrance of the bar. Thus, the trial court found defendant guilty first-degree murder.

---

[1] Defendant had a split lip, head pain, and a swollen eye and jaw from the altercation.

Defendant now appeals, challenging the deliberation element of that offense.

## II. STANDARD OF REVIEW

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). A trial court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

## III. ANALYSIS

Defendant argues that there is insufficient evidence presented to find him guilty of first-degree murder. Specifically, defendant argues that the prosecution did not prove the deliberation element of that offense beyond a reasonable doubt. We disagree.

"[D]ue process requires proof by the prosecutor of each element beyond a reasonable doubt." *People v Mette*, 243 Mich App 318, 327; 621 NW2d 713 (2000). A person is guilty of first-degree murder when the murder is "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). For first-degree murder, the prosecution must show that the killing was intentional, deliberate, and premeditated. *People v Youngblood*, 165 Mich App 381, 386-387; 418 NW2d 381 (1988). That is, "[t]o convict of first-degree murder, the prosecution [is] required to prove beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberated." *Id.* at 386-387. "To premediate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). Further, with regard to deliberation, "[t]he time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense . . . ." *Id.* at 243 (quotation marks and citation omitted). Premeditation and deliberation can be determined through the facts and circumstances surrounding the killing. *Youngblood*, 165 Mich App at 387.

Defendant does not argue that the evidence failed to show beyond a reasonable doubt that he intentionally killed a human. Further, given his express reference in his brief on appeal to "deliberation" and "disturbing excitement," which our Supreme Court has used to explain the "deliberation" element, see *Oros*, 502 Mich at 243, and given that he does not reference "premeditation" or otherwise analyze that element, it appears that he is not arguing that the prosecution failed to show premeditation. The only element at issue is therefore deliberation.

The trial court did not err by finding that the evidence was sufficient to show deliberation beyond a reasonable doubt. The time that defendant spent retrieving his handgun from his car's air vent was more than sufficient for him to deliberate upon pointing and shooting the gun at the entrance to the bar. See *Oros*, 502 Mich at 243 (explaining that deliberation may occur in a matter

of seconds). Moreover, defendant himself admitted while testifying that he was aware at the time that "jail" was a likely outcome of the shooting. Thus, defendant clearly "measure[d] . . . the major facets" of shooting into the bar. See *id*. Additionally, defendant removed his jacket before returning to the bar with his handgun, which indicates that he was able to reflect upon a detail that would reduce the possibility of criminal punishment for his upcoming actions—by removing his jacket, defendant made it less likely that those inside the bar would recognize him. Given these facts, in addition to the other facts cited by the trial court showing that defendant executed a methodical plan to shoot directly at a large number of people gathered near the front of the bar, the trial court did not err by finding that the evidence was sufficient to show the element of deliberation beyond a reasonable doubt. In other words, defendant did not abruptly shoot at the group of people, with no thought or reflection beforehand. Rather, he formulated a plan that would reduce his chances of being stopped beforehand or sent to jail afterwards. He deliberated upon the shooting.

To the extent that defendant intended to argue on appeal that the evidence showed "adequate provocation" for the purposes of voluntary manslaughter, that argument misses the mark.[2] It is certainly arguable that a physical assault, by itself, would be "adequate provocation." However, to reduce a charge from murder to voluntary manslaughter, there must also be a showing that "there was no lapse of time during which a reasonable person could have controlled his passions." *People v Tierney,* 266 Mich App 687, 714; 703 NW2d 204 (2005). Here, at least five minutes elapsed between the time that defendant was assaulted by the bouncer and the time that defendant started shooting. This amount of time gave defendant an opportunity to understand that he should take measures—such as removing his jacket—that would reduce the likelihood of criminal punishment, but that criminal punishment was the likely outcome in any event. Thus, the trial court did not err by finding defendant guilty of murder instead of voluntary manslaughter.

## IV. CONCLUSION

The evidence was sufficient to show the element of deliberation for the purposes of first-degree murder, and defendant does not challenge the remaining elements of that offense. Therefore, the trial court did not err by finding him guilty of first-degree murder beyond a reasonable doubt.

---

[2] "Adequate provocation" is a term of art that refers to voluntary manslaughter. See *People v Tierney,* 266 Mich App 687, 714; 703 NW2d 204 (2005). When the trial court read the agreed-upon instructions into the record at the end of trial, it recited the elements of first-degree premediated murder and second-degree murder, but not voluntary manslaughter. We could therefore consider this argument waived. See *People v Meissner*, 294 Mich App 438, 458; 812 NW2d 37 (2011).

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan